DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} On February 18, 2006, defendant William Bartrum, through text messages and telephone conversations with a prostitute, agreed to pay $500 for a sexual encounter with a mother and her eleven-year-old daughter. Unbeknownst to Mr. Bartrum, the prostitute was serving as a confidential informant for the Cuyahoga Falls Police Department and the mother and daughter were non-existent. He was arrested, tried before a jury in Summit County Common Pleas Court, and convicted of violating Section 2907.21(A)(3) of the Ohio Revised Code by agreeing to pay a minor to engage in sexual activity. He has argued on appeal: (1) that his conviction was against the manifest weight of the evidence; (2) that his *Page 2 
conviction was not supported by sufficient evidence; (3) that the trial court incorrectly received hearsay statements into evidence; and (4) that venue was not appropriate in Summit County. This Court reverses Mr. Bartrum's conviction because, in order to obtain a conviction for violating Section 2907.21(A)(3), the State must prove that a defendant agreed to pay an actual minor to engage in sexual activity. Mr. Bartrum's conviction, therefore, is not supported by sufficient evidence. Mr. Bartrum's remaining assignments of error are moot and are overruled on that basis.
 I. {¶ 2} During February 2006, a prostitute placed an advertisement in the Canton Repository consisting of two words, "Ultimate Fantasy," followed by a telephone number. William Bartrum placed a call to the number and arranged for the prostitute, who identified herself as "Tina," to visit him at his apartment in Wayne County, Ohio. He paid her $150 for an hour during which she performed fellatio on him and engaged in sexual intercourse with him. During her visit, she mentioned to Mr. Bartrum, either in response to a question or without prompting, that she did "fetishes and fantasies" and could arrange an encounter for him with a "mother/daughter team." She told him that, if he wanted such an encounter, he should send her a text message or call her "in the next day or so."
 {¶ 3} Mr. Bartrum testified that he telephoned the prostitute about a week later to see if she was available to visit him again. The idea of a "mother/daughter *Page 3 
team" came up again during that conversation. According to Mr. Bartrum, he believed that the prostitute brought it up, asking whether he was ready for the "fetish or fantasy" they had talked about. He testified that he believed he said yes, although he was not serious.
 {¶ 4} At 10:00 a.m. on February 18, 2006, Mr. Bartrum sent the prostitute a text message in which he asked whether she had a daughter. Apparently, instead of responding, she telephoned a Cuyahoga Falls police detective and informed him that she had a client who was attempting to arrange a sexual encounter with an eleven-year-old girl. The detective met with her and placed a voice recorder on her telephone.
 {¶ 5} At 4:47 p.m. that same day, Mr. Bartrum again sent a text message to the prostitute, this time asking whether any of her "girls" would "let there dau[ghter] se[e]." In response, she asked, "[h]ow old?" After again asking whether she was a mother and her responding no, he asked: "Any with a 10yr or older?"
 {¶ 6} Over the next three and three-quarter hours, Mr. Bartrum and the prostitute exchanged numerous text messages and had two telephone conversations. A Cuyahoga Falls Police dispatcher, pretending to be an eleven-year-old girl, also had a telephone conversation with Mr. Bartrum. The Cuyahoga Falls Police Department was able to retrieve the text messages from the prostitute's telephone, and a transcript of them was received in evidence at Mr. *Page 4 
Bartrum's trial. A transcript of the telephone conversations between Mr. Bartrum and the prostitute was also received in evidence. Although there was no transcript of the conversation between Mr. Bartrum and the police dispatcher, the dispatcher testified at trial regarding the contents of that conversation.
 {¶ 7} Through the text messages, Mr. Bartrum indicated that he wanted the daughter to "see all 3 of us nud[e]" and, possibly, to "join in." The prostitute responded that she could arrange it, but that it would "cost." Between 5:33 p.m. and 6:07 p.m., Mr. Bartrum sent three messages asking about the price, and the prostitute finally responded: "500." Between 6:12 p.m. and 6:23 p.m., he asked the ages of the mother and daughter three times. The prostitute finally responded that the daughter was eleven years old, and he immediately asked whether he could talk to her. The prostitute responded that she did not see why not.
 {¶ 8} It is not clear whether the conversation between the dispatcher and Mr. Bartrum took place immediately after Mr. Bartrum's request to talk to the daughter, but, at some point, she spoke to him, pretending to be the daughter. She testified that the conversation was "very short." According to her, Mr. Bartrum asked if she was 11, and she replied that she was. He asked what kinds of things she did, and she said she would not talk about it over the telephone. He asked if she was a police officer, and she said she was not. Finally, he said he might not show up, and she said that she and her mother would be waiting for him. *Page 5 
 {¶ 9} In response to a text message asking the names of the mother and daughter, the prostitute told Mr. Bartrum that the mother's name was Clare and the daughter's name was Kelly. He asked if he could talk to Clare. Again, it is not clear whether it was immediately after Mr. Bartrum's request, but at some point the prostitute telephoned Mr. Bartrum, pretending to be "Clare."
 {¶ 10} After identifying herself as "Clare," she asked his name, and he told her "Tony." She asked if he wanted "some company" with her and her daughter, and he replied that he did. She said that the daughter was 11, and he responded "that is sweet." He then asked her to describe herself and her daughter, which she did. He asked if she would mind if "they shoot me watching uh, really up close and her naked and stuff," and she responded that she would not. He then said: "Ah, sweet. Never know I might taste both of you." She told him that he would have to come to them in the "north Akron area," and he said "OK." She then said it was going to cost $500, and he said that was "OK." He asked how to get hold of her once he got in the area, and she gave him directions and told him to call her as he was getting off Route 8 at the Graham Road exit. He said "OK."
 {¶ 11} In a text message at 7:33 p.m., Mr. Bartrum asked "Tina" whether Kelly was "into Anal and sukn," and she responded that she was very open minded. He then said that he did not use "rubbers," and she responded that they would discuss that when she saw him. He then again asked if he could talk to Clare. The prostitute, again pretending to be "Clare," telephoned Mr. Bartrum, *Page 6 
and he told her that he was "coming up on Graham Road." He told her what kind of car he was driving, and she directed him to a room at an Economy Inn. He said he would probably see her "in about 10 minutes." At 8:26 p.m., he sent a text message that said: "Later I smell a set up." He did not show up at the motel.
 {¶ 12} On the afternoon of the following day, Mr. Bartrum again sent the prostitute a text message, asking whether Kelly was really eleven years old and how he could contact Clare and Kelly. He then asked if she had ever engaged in sex with a dog. Ignoring his question about the dog, she responded that Clare and Kelly would be available early the following week. He then asked how much she would charge to have sex with a "rottie," and whether there would be any way to get Kelly alone. She did not respond.
 {¶ 13} The following day, February 20th, Mr. Bartrum again sent the prostitute a text message, this time asking how much it would be for Kelly alone. She responded that it would be $500. He then again asked a number of questions about whether she would engage in sex with a dog.
 {¶ 14} As mentioned above, during one of his conversations with the prostitute, Mr. Bartrum said that his name was "Tony." The cellular telephone that he was using during his text messaging and conversations with the prostitute had apparently originally belonged to and was still listed as belonging to Mr. Bartrum's brother, Tony Bartrum. The Cuyahoga Falls Police Department showed the prostitute a photo array that included a photograph of Tony Bartrum, and she *Page 7 
mistakenly identified him as the person she had met at the Wayne County apartment. The police arrested him for compelling prostitution.
 {¶ 15} When Mr. Bartrum learned that his brother had been arrested, he informed police that he was the person sending the text messages and speaking with the prostitute. He prepared a written statement that was received in evidence at trial in which he said he had asked the prostitute about a mother and daughter and she had said "OK," but that he thought "it was a game." He further wrote that the prostitute had told him where and when, but that he got scared and backed out. He wrote that he thought it was a game in which the prostitute was going to have another prostitute pretend to be her daughter. In his trial testimony, Mr. Bartrum pointed to his questions to the prostitute about bestiality as support for the idea that he was engaging in fantasy.
 {¶ 16} Mr. Bartrum's brother was released from custody, and Mr. Bartrum was arrested and charged with compelling prostitution. He was tried before a jury, which found him guilty. The trial court adjudicated him a sexually-oriented offender and sentenced him to one year in prison. It suspended his sentence on condition that he complete five years of community control. He has assigned four errors on appeal.
 II. *Page 8 {¶ 17} Mr. Bartrum's first assignment of error is that his conviction is against the manifest weight of the evidence. Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh, this Court will first consider Mr. Bartrum's second assignment of error, that his conviction is not supported by sufficient evidence. See ChicagoOrnamental Iron Co. v. Rook, 93 Ohio St. 152, 156 (1915).
 A. {¶ 18} An argument that a conviction is not supported by sufficient evidence presents a question of law, which this Court reviews de novo.State v. Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Bartrum's guilt:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 19} Mr. Bartrum was convicted of violating Section 2907.21(A)(3) of the Ohio Revised Code: (A) No person shall knowingly do any of the following: *Page 9 
 . . . .
 (3) Pay or agree to pay a minor, either directly or through the minor's agent, so that the minor will engage in sexual activity, whether or not the offender knows the age of the minor. . . .
In order to violate this section, Mr. Bartrum would have had to agree to pay a minor, either directly or through the minor's agent, to engage in sexual activity. Sexual activity, for purposes of Section 2907.21(A)(3), includes, among other things, cunnilingus or any touching of an erogenous zone of another for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(A)-(C). Mr. Bartrum has argued that the State failed to present evidence that, if believed, would have proven that he agreed to pay a minor to engage in sexual activity.
 {¶ 20} In his text messages to the prostitute, Mr. Bartrum wrote, among other things, that maybe the daughter could "join in" and, when told that the price would be $500, responded "OK." He also asked whether the daughter was "into Anal or sukn," and, when the prostitute responded that she was very open minded, wrote that he does not use "rubbers." Similarly, during his telephone conversation with the prostitute, who at the time was pretending to be the eleven-year-old girl's mother, Mr. Bartrum stated that he "might taste" both the mother and the daughter. When reminded that it was going to cost him $500, he stated that that was "OK." When asked when he would be to the Graham Road exit off Route 8, he indicated that he would be there around 8:30 p.m. *Page 10 
 {¶ 21} The evidence presented by the State, viewed in a light most favorable to the State, proved that Mr. Bartrum thought he had reached an agreement to pay $500 in order for an eleven-year-old girl to engage in sexual activity. The issue presented by this case is whether the State can obtain a conviction for violating Section 2907.21(A)(3) if the minor about whom the defendant believes he has reached an agreement is non-existent.
 {¶ 22} In State v. Goldblatt, 8th Dist. Nos. 87442, 87462, 2006-Ohio-5930, the defendant told an FBI agent who was pretending to be a "pimp" that he would pay $200 to engage in sexual activity with a ten-or eleven-year-old girl. The Eighth District Court of Appeals affirmed his conviction for violating Section 2907.21(A)(3), despite the fact that no actual minor was involved in the alleged crime. In doing so, it wrote that it was relying on the reasoning of the Second District Court of Appeals in State v. Adrian, 2d Dist. No. 2005 CA 23,2006-Ohio-4143:
 Although[, in Adrian,] no actual young girl either existed or was at the location upon [the defendant's] arrival, the appellate court determined [the defendant's] convictions for both compelling prostitution and attempted rape were supported by sufficient evidence and by the weight of the evidence. . . .
 The Ohio Second District's reasoning with regard to whether the evidence proved the necessary elements of the crime is sound. In this case, as in Adrian, appellant spoke with a person who played the role of a child's agent; although no actual child existed, the tape recordings showed a plan for the agent to bring the child to him for him to engage in sexual activity with her. *Page 11 
Goldblatt at ¶¶ 46-47.
 {¶ 23} The problem with the Eighth District's reliance on the Second District's opinion in Adrian is that the Second District did not determine that the defendant's conviction for compelling prostitution in that case was supported by sufficient evidence or not against the manifest weight of the evidence. The defendant in Adrian was convicted of one count each of attempted rape, attempted complicity to commit kidnapping, and compelling prostitution and two counts of complicity to prostitution. It is not clear from the Second District's opinion whether the defendant's compelling prostitution conviction was based on subparagraph (3) of Section 2907.21(A) or another subparagraph of that section. Regardless of which subparagraph the defendant's conviction was based on, however, he did not attack that conviction on appeal. While he argued that his attempted rape and attempted complicity to commit kidnapping convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, he did not argue that his compelling prostitution conviction was not supported by sufficient evidence or was against the manifest weight of the evidence. State v.Adrian, 2d Dist. No. 2005CA23, 2006-Ohio-4143, at ¶¶ 2-3.
 {¶ 24} Further, while the defendant's attempted rape and attempted complicity to commit kidnapping convictions in Adrian were based on his attempt to engage in sexual activity with a non-existent eight-year-old girl, it is not clear that his compelling prostitution conviction was based on his attempt to have a nonexistent *Page 12 
minor engage in sexual activity. In addition to attempting, through one acquaintance, to arrange to engage in sexual activity with two non-existent minors, he had also asked a second acquaintance to obtain young girls to have sex with him. This second acquaintance had solicited an actual sixteen-year-old girl on the defendant's behalf. His conviction for compelling prostitution may have been based on the solicitation of that actual sixteen-year-old girl rather than his agreement to pay money to engage in sexual activity with the non-existent minor. See Section 2907.21(A)(2) of the Ohio Revised Code. Whether his conviction for compelling prostitution was based upon an actual or a non-existent minor is not clear from the Second District's opinion.
 {¶ 25} The Eighth District's reliance on Adrian as support for its conclusion that an actual minor is not necessary for a conviction under Section 2907.21(A)(3), therefore, was misplaced. This Court has concluded that, in order to obtain a conviction for violating Section2907.21(A)(3), the State must present evidence that, if believed, would prove that the defendant paid or agreed to pay an actual minor to engage in sexual activity.
 {¶ 26} Section 2907.21(A)(3), on its face, prohibits agreements with a "minor." It does not prohibit agreements "believed to be with a minor." When the legislature has determined that an actual minor need not be involved in order for there to be a crime, it has said so in the statute defining that crime. For example, some forms of importuning do not require an actual minor: *Page 13 
 (C) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:
 . . .
 (2) The other person is a law enforcement officer posing as a person who is less than thirteen years of age, and the offender believes that the other person is less than thirteen years of age or is reckless in that regard.
Section 2907.07(C) of the Ohio Revised Code. Section 2907.21(A)(3) has no similar provision.
 {¶ 27} While acknowledging that the Second District's opinion inAdrian did not determine that "Adrian's convictions for both compelling prostitution and attempted rape were supported by sufficient evidence and by the weight of the evidence," the dissent has suggested that "the Eighth District Court of Appeals correctly applied the logic ofAdrian to facts that are precisely on-point with this case." (Emphasis added by dissent.) The defendant in Adrian, however, was convicted of attempted rape, not rape. The logic of Adrian, therefore, might have supported a conviction in Goldblatt or this case for an attempt to compel prostitution. Neither the defendant in Goldblatt nor Mr. Bartrum, however, was indicted for or convicted of attempting to compel prostitution. They were convicted of compelling prostitution. There was insufficient evidence to support that conviction. *Page 14 
 {¶ 28} In this case, Mr. Bartrum thought he was dealing with an agent for a minor. Actually, the person he was dealing with was only pretending to be an agent for a non-existent minor. "It must never be forgotten that there can be no such thing as an agent without a principal." Chicago Cottage Organ Co. v. Rishforth, 14 Ohio CD. 660 at *2 (1903). Since there was no minor, the prostitute with whom Mr. Bartrum agreed to pay $500 was not "the minor's agent."
 {¶ 29} The issue of whether Mr. Bartrum committed any crime is not before this Court. As mentioned above, Mr. Bartrum was not indicted for attempting to compel prostitution. Further, on facts similar to the facts in this case, the Second District, in Adrian, affirmed the defendant's conviction for attempted rape. Mr. Bartrum, however, was also not indicted for attempted rape. The only issue before this Court is whether the State presented sufficient evidence to support Mr. Bartrum's conviction for violating Section 2907.21(A)(3). It did not. Mr. Bartrum's second assignment of error is sustained.
 B. {¶ 30} In view of this Court's ruling on Mr. Bartrum's second assignment of error, his remaining assignments of error are moot. Accordingly, they are overruled on that basis. *Page 15 
 III. {¶ 31} A defendant cannot be convicted of violating Section2907.21(A)(3) of the Ohio Revised Code unless he pays or agrees to pay an actual minor to engage in sexual activity. Mr. Bartrum's second assignment of error is sustained. His other assignments of error are moot and are overruled on that basis. The judgment of the Summit County Common Pleas Court is reversed.
Judgment reversed and cause remanded
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 16 
Costs taxed to appellee.
BAIRD, J. CONCURS